**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-mj-8472-RMM**

**IN RE SEALED COMPLAINT**

_____/

FILED BY____MEE____D.C.

*Jun 22, 2026*

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

**CRIMINAL COVER SHEET**

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?_No

3. Did this matter involve the participation of or consultation with now Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

4. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

5. Did this matter involve the participation of or consultation with Magistrate Judge Yeney Hernandez during her tenure at the U.S. Attorney's Office, which concluded on April 2, 2026? No

JASON REDING QUIÑONES
UNITED STATES ATTORNEY

By:      _____
SUZANNE HUYLER
Assistant United States Attorney
Court No. A5503350
500 S. Australian Avenue, Suite 400
West Palm Beach, FL 33401
Tel: (561) 209-1013
Suzanne.Huyler@usdoj.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 26-mj-8472-RMM**

IN RE:

**SEALED CRIMINAL COMPLAINT**

_____/

| FILED BY | *MEE* | D.C. |
|---|---|---|
| | ***Jun 22, 2026*** | |
| | ANGELA E. NOBLE CLERK U.S. DIST. CT. S. D. OF FLA. - WPB | |

## MOTION TO SEAL

The United States of America, by and through its undersigned Assistant United States Attorney, respectfully moves this Honorable Court to enter an order to seal the attached Criminal Complaint, Affidavit and supporting documentation in this matter because disclosure may lead to the destruction of evidence or flight by the subjects of the ongoing investigation.

WHEREFORE, the United States requests the Court to sign the attached order sealing the accompanying motion.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

BY: _____

SUZANNE HUYLER
Assistant United States Attorney
Court No. A5503350
500 S. Australian Avenue, Suite 400
West Palm Beach, FL 33401
Tel: (561) 209-1013
Suzanne.Huyler@usdoj.gov

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 26-mj-8472-RMM

IN RE:

SEALED CRIMINAL COMPLAINT
_____/

FILED BY_____MEE_____D.C.

Jun 22, 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

### ORDER TO SEAL

THIS CAUSE having come before this Court on the government's Motion to Seal the accompanying Criminal Complaint, Affidavit, and supporting documentation in this matter, and it appearing to the Court that good cause has been presented for the granting of such motion,

IT IS HEREBY ORDERED that the Criminal Complaint, Affidavit and supporting documentation in this matter, in this matter be SEALED until further order of the Court.

DONE AND ORDERED in chambers this _____ day of June 2026, at West Palm Beach, Florida.

HON. RYON M. McCABE
UNITED STATES MAGISTRATE JUDGE

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Stephanie Hugee, | )<br>)<br>)<br>)<br>)<br>) |

Case No.  26-mj-8472-RMM

Defendant(s)

FILED BY_____ *MEE* _____D.C.

**Jun 22, 2026**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of     5/1/26, 5/5/26, 5/12/26, 5/29/26     in the county of          Palm Beach          in the

     Southern          District of          Florida          , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C.§ 841(a)(1) | Distribution of more than 50 grams of methamphetamine |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Mark Finnamore, ATF TFO
_____
*Printed name and title*

Sworn and Attested to me by Applicant by Telephone (FaceTime) pursuant to Fed. R. Crim. P. 4(d) and 4.1

Date:      06/22/2026

_____
*Judge's signature*

City and state:          West Palm Beach, FL

Hon. Ryon M. McCabe, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Mark Finnamore, first being duly sworn, do hereby depose and state as follows:

1.     I, Mark Finnamore, am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have served in that capacity since December 2017. I am a graduate of the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia. In my capacity as an ATF Special Agent, I have received specialized training and experience in the investigation of federal firearms offenses. This affidavit is submitted in support of an Application for a Criminal Complaint and an Arrest Warrant for **Stephanie Hugee** for distribution of a controlled substance (methamphetamine more than 50 grams) in violation of Title 21 U.S.C.§ 841(a)(1) and (b)(1)(A)(viii).

2.     Prior to my employment as a Special Agent with ATF, I attended the Federal Law Enforcement Training Center for the Criminal Investigator Training Program as well as Special Agent Basic Training with ATF, where I received extensive training in arson, explosives, firearms, and narcotics related investigations. In my capacity as an ATF Special Agent, I have received specialized training and experience in the investigation of federal firearms and narcotics offenses. Additionally, as an ATF Special Agent I have personally participated in the execution of at least 50 search warrants involving the possession and sale of firearms. I have personally participated in the arrests of over 100 individuals for illegal possession and sales of firearms. I have interviewed at least 75 individuals who were involved with possession of firearms by prohibited persons. I have personally participated in over 200 controlled purchases of firearms from prohibited persons either as a case agent or undercover agent. I am a law enforcement officer of the United States, and I am empowered to conduct investigations, execute warrants, and make

arrests for offenses against the United States enumerated in, but not limited to, Titles 18 and 21 of the United States Code.

3.      The following facts are based upon information relayed to me by other members of law enforcement, information obtained from expert reports, documents, and information derived from law enforcement sources and databases. This affidavit is submitted for the limited purpose of establishing probable cause and does not include every detail known to me about the investigation. The following facts are based upon information relayed to me by other members of law enforcement, information obtained from expert reports, documents, and information derived from law enforcement sources and databases. This affidavit is submitted for the limited purpose of establishing probable cause and does not include every detail known to me about the investigation.

## PROBABLE CAUSE

### Controlled Purchase of approximately 36.9 grams – May 1, 2026

4.      On or about May 1, 2026, at the direction of law enforcement, a documented ATF Confidential Informant that has been deemed credible ("CI"), exchanged communications with HUGEE to arrange the purchase of methamphetamine.

5.      On May 1, 2026, a Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Special Agent, acting in an undercover (UC) capacity, accompanied by Confidential Informant (CI), hereinafter referred to as CI, equipped with audio/video recording equipment and ATF Investigative Funds met with suspect HUGEE to conduct a narcotics transaction.

6.      On this same date at approximately 5:03PM, The UC and CI arrived at HUGEE's residence (820 Booker Ave, West Palm Beach, FL) where she instructed the CI to meet. Then, the

2

CI sent HUGEE a text message advising her that they had arrived. HUGEE stated that she was nearby and on her way home to conduct the transaction.

7.      On this same date, at approximately 5:13PM, HUGEE arrived at the residence driving a black SUV. HUGEE then exited the vehicle, approached the UC Vehicle (" UCV"), and entered the back seat. Once HUGEE was in the UCV, she introduced herself to the UC as "Rainbow," and retrieved a knotted clear plastic baggie from her purse containing multicolored pills of suspected methamphetamines. HUGEE handed the baggy of pills to the UC to inspect, and the UC handed HUGEE $1,060.00 in ATF investigative funds.

8.      The UC explained to HUGEE they would distribute the pill throughout the northeast and are interested in purchasing a higher quantity of pills in the future. The UC asked if she would lower the price for the next transaction. HUGEE told the UC "She" (suspected source of supply) may be able to lower the price on the pills in the future. The UC asked HUGEE how much notice she would need, to which she responded "I call her and order it…I order it so it can be in a day or two…bitch that's what it is." HUGEE exited the UCV and entered the residence. The UC and the CI departed the area.

9.      Following the transaction, the suspected methamphetamine was field tested and yielded positive results for methamphetamine. The suspected methamphetamine and packaging had an approximate weight of 36.9 grams. The field test positive methamphetamine was submitted to DEA Southeastern laboratory for chemical analysis. The results of the laboratory analysis are pending. The controlled purchase with HUGEE was captured both on video and audio recording.

3

**Controlled Purchase of approximately 82.6 Grams of methamphetamine – May 5th, 2026**

10.     On May 5, 2026,   Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agent (SA), acting in an undercover (UC) capacity, accompanied by Confidential Informant (CI), hereinafter referred to as CI, met with HUGEE to conduct a narcotics transaction. The transaction was arranged through a series of phone calls and text messages between CI and HUGEE.

11.     On this same date, at approximately 10:52AM, UC and CI arrived at 820 Booker Ave. Upon arrival, The UC observed an older black male wearing a white hoodie, jean shorts, seated in a wheelchair, in the driveway of the residence. CI placed a call to HUGEE to advise her they had arrived. HUGEE stated that she was on her way back to her residence to conduct the transaction.

12.     On this same date, at approximately 10:59AM, HUGEE arrived driving a black Kia SUV (LP: EAL6737) with an additional unknown black female (UBF) seated in the passenger seat. HUGEE exited the vehicle, met with the male, before approaching the passenger side of the UCV. Once at the UCV, HUGEE greeted The UC and CI, and told them the male was her husband, and the additional female was her girlfriend. Then, HUGEE stated that she needed to retrieve the narcotics in the residence and would return to conduct the transaction.

13.     On this same date, at approximately 11:04AM, HUGEE exited the residence, returned to the UCV, then entered the back seat of the UCV. Then, HUGEE retrieved a small box containing a knotted plastic baggie and the suspected methamphetamine pills inside. HUGEE handed the box and the pills to the UC to inspect. The UC asked HUGEE if it was the agreed upon 200 pills and if the pills were "10 a pop" ($10.00 per pill). HUGEE acknowledged and stated, "I

4

was gonna do the 9 ($9.00)…when I asked her (suspected source of supply) she was acting a little iffy…It's not me it's her…with her shit."

14.     UC handed HUGEE $1,000.00 in ATF Investigative Funds to count, then an additional $1,000.00 in ATF funds for the narcotics (Figure 3). The UC explained that they would purchase a higher quantity in the future if she lowered the price. HUGEE stated "I told her ya'll put me on a schedule…If ya'll keep coming back…what is the price that she going to drop them to…I'ma talk to her today…can you drop the price at least ($7.00) or 8 ($8.00) dollars." Then, the UC handed HUGEE an additional $100.00 in ATF investigative funds to facilitate the transaction. HUGEE exited the vehicle and returned to her residence. The UC and the CI departed the area.

15.     Following the transaction, the suspected methamphetamine was field tested and yielded positive results for methamphetamine. The suspected methamphetamine and packaging had an approximate weight of 82.6 grams. The field test positive methamphetamine was submitted to DEA Southeastern laboratory for chemical analysis. The results of the laboratory analysis are pending. The controlled purchase with HUGEE was captured both on video and audio recording.

**Controlled Purchase of approximately 154.0 Grams of Methamphetamine – May 12, 2026**

16.     On May 12, 2026, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agent (SA) acting in an undercover (UC) capacity, accompanied by a Confidential Informant (CI), hereinafter referred to as CI, met with **HUGEE** to conduct a narcotics transaction. The transaction was arranged through a series of phone calls and text messages between CI and HUGEE.   During the undercover operation, The UC and CI were equipped with electronic monitoring/recording equipment.

17.     The UC and CI, traveled to Pink Bird Car Wash (879 W. Executive Center Dr., West Palm Beach, FL) to conduct the narcotics transaction with HUGEE. The UC and CI arrived

5

at Pink Bird Car Wash at approximately 11:14AM. Upon arrival, the CI placed a call to HUGEE to advise her they had arrived. The UC observed HUGEE parked in a stall vacuuming her vehicle.

18.     The UC parked the UCV next to HUGEE's vehicle. HUGEE entered the back seat of the UCV. The UC asked if she had the agreed upon methamphetamine pills. HUGEE retrieved a knotted plastic baggie, containing multicolored pills, from a Clorox Wipes container, and handed the container to the UC. The UC inspected the baggie and asked HUGEE how many pills were in the baggie. HUGEE told the UC it was the agreed upon amount of 400. Then, the UC confirmed with HUGEE that the price per pill was $8.00 to which HUGEE acknowledged. Then, the UC handed HUGEE $3,200.00 in ATF investigative funds for the methamphetamine pills.

19.     HUGEE exited the UCV and returned to her vehicle and the UC and the CI departed the area.

20.     Following the transaction, the suspected methamphetamine was field tested and yielded positive results for methamphetamine. The suspected methamphetamine and packaging had an approximate weight of 154 grams. The field test positive methamphetamine was submitted to DEA Southeastern laboratory for chemical analysis. The results of the laboratory analysis are pending. The controlled purchase with HUGEE was captured both on video and audio recording.

**Controlled Purchase of approximately 162.7 Grams of Methamphetamine – May 29, 2026**

21.     On May 29, 2026, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Special Agent (SA), acting in an undercover (UC) capacity, met with HUGEE to conduct a narcotics transaction. The transaction was arranged through a series of phone calls and text messages between the UC and HUGEE.

22.    On this same date, at approximately 10:44AM, The UC contacted HUGEE to advise her he had arrived. Then, SA 6021 observed HUGEE exiting her residence, approach the UCV, and enter the front passenger seat.

23.    HUGEE retrieved a grey grocery bag containing an additional knotted plastic bag containing suspected methamphetamine pills and handed it to the UC. The UC inspected the pills and handed HUGEE $3,200.00 in ATF investigative funds. Then, the UC informed HUGEE they would be out of town for a couple of weeks but would like to place an order of 1,000 pills to purchase when they returned to which HUGEE agreed. The UC asked HUGEE if she would lower the price per pill if they purchased the 1,000 pills in the future. HUGEE agreed and stated that she would speak with "Her" (suspected source of supply) but thought she would be able to lower the price to approximately $5.00. Then, the UC paid HUGEE an additional $100.00 in ATF investigative funds for facilitating the transaction.

24.    Then, HUGEE exited the UCV and returned to her residence and the UC departed the area.

25.    Following the transaction, the suspected methamphetamine was field tested and yielded positive results for methamphetamine. The suspected methamphetamine and packaging had an approximate weight of 162.7 grams. The field test positive methamphetamine was submitted to DEA Southeastern laboratory for chemical analysis. The results of the laboratory analysis are pending. The controlled purchase with HUGEE was captured both on video and audio recording.

26.     Based on the foregoing facts, I respectfully submit that there is probable cause to believe that Stephanie HUGEE did distribute a controlled substance (methamphetamine more than 50 grams) in violation of Title 21 U.S.C.§ 841.


FURTHER YOUR AFFIANT SAITH NAUGHT


Respectfully Submitted,


Mark Finnamore
Special Agent, ATF


ATTESTED TO ME TELEPHONICALLY
(VIA FACETIME) BY THE APPLICANT
IN ACCORDANCE WITH THE REQUIREMENTS
OF FED. R. CRIM. P. 4.1 THIS _22_
DAY OF JUNE, 2026.

RYON M. MCCABE
UNITED STATES MAGISTRATE JUDGE

8

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: Stephanie Hugee

**Case No**: 26-mj-8472-RMM

Count #: 1

Distribution of a controlled substance (more than 50 grams of methamphetamine)

Title 21 U.S.C.§ 841(a)(1) and (b)(1)(A)(viii)
* **Max. Term of Imprisonment:** Life
* **Mandatory Min. Term of Imprisonment (if applicable):** 10 years
* **Max. Supervised Release:** 5 years to Life
* **Max. Fine:** $10,000,000
* **Special Assessment:** $100

**\*Refers only to possible term of incarceration, supervised release and fines.  It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.**